IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

JERMAINE DAWKINS,

               Petitioner,

     v.

UNITED STATES OF AMERICA,

               Respondent.

HONORABLE JEROME B. SIMANDLE

Civil Action
No. 13-2691 (JBS)

[Crim. No. 09-582]

**OPINION**

APPEARANCES:

Mr. Jermaine Dawkins
No. 48143-054
U.S.P. McCreary
P.O. Box 3000
Pine Knot, KY 42635
    Petitioner, pro se

Jane H. Yoon, Assistant U.S. Attorney
OFFICE OF THE U.S. ATTORNEY
970 Broad Street, Suite 700
Newark NJ 07102
    Attorney for Respondent

**SIMANDLE, Chief Judge:**

**I.   INTRODUCTION**

    Petitioner Jermaine Dawkins brings this petition to vacate and correct his sentence pursuant to 28 U.S.C. § 2255. [Docket Items 1 & 14.] Petitioner pleaded guilty to one count of bank robbery under 18 U.S.C. § 2113(a) and, on January 14, 2011, was sentenced to 151 months imprisonment, because he qualified as a

career offender. Petitioner now moves for the Court to vacate
and correct his sentence on three grounds: (1) the Court
improperly added a two-point enhancement to his sentence under §
3C1.2 of the U.S. Sentencing Commission Guidelines Manual
("U.S.S.G." or "the Guidelines"); (2) the Court improperly
classified Petitioner as a career offender; and (3) he was
deprived of the effective assistance of counsel in violation of
the Sixth Amendment to the U.S. Constitution. For the reasons
explained below, the Court will deny the Petition.

## II. BACKGROUND

On June 4, 2009, Petitioner completed a federal prison
sentence for two counts of bank robbery and began a term of
supervised release. Two days later, he robbed a Mutual Bank in
Edison, N.J., and, three days after that, robbed a Skylands
Community Bank in Metuchen, N.J.

By the Government's count, these robberies were the tenth
and eleventh for which Petitioner had been arrested and charged.
(Resp't Opp'n [Docket Item 16] at 1.) On August 4, 1998,
Petitioner was convicted of attempted robbery in Suffolk County
Criminal Court in New York, and initially sentenced to 6 to 12
years imprisonment. (Presentence Investigation Report ("PSR"),
United States v. Dawkins, No. 09-cr-582-JBS-1 (D.N.J. Oct. 6,
2010) ¶ 64.) He was convicted in the same court of robbery in
the first degree on October 28, 1998, and was initially

2

sentenced to 150 months to 25 years imprisonment. Petitioner successfully appealed his convictions, only to enter a guilty plea for both crimes, for which he was resentenced to 6 to 12 years imprisonment on March 22, 2002. (PSR ¶¶ 61, 64, 67.) He was convicted in Nassau County Criminal Court in New York on January 5, 1999, of robbery and displaying a firearm, and sentenced to 4 to 8 years imprisonment, to run concurrently with the Suffolk County sentences. (PSR ¶ 68.) There is no indication that this sentence was ever vacated or amended or that it was incorporated in the resentencing on March 22, 2002.

On December 1, 2001, Petitioner was convicted on two counts of bank robbery in the U.S. District Court for the Southern District of New York, based on two separate bank robberies committed on June 27, 1996, and August 7, 1996. (PSR ¶¶ 75-77.) For the purposes of sentencing, the district court judge considered Petitioner's state-court robbery convictions to be "part of a single common scheme or plan." (Reply [Docket Item 25] at 7 ¶¶ 2-4.) Petitioner was sentenced to 71 months imprisonment, with 14 months running concurrently with Petitioner's unexpired state sentences. (PSR ¶ 75.)

When Petitioner's federal prison term ended, in June 2009, he robbed the two New Jersey banks described above, and, on July 13, 2010, pleaded guilty to one count of bank robbery. (See

Judgment, <u>United States v. Dawkins</u>, No. 09-cr-582-JBS-01 (D.N.J. Jan. 18, 2011) [Docket Item 19].)

At sentencing, and in a pre-sentencing letter to this Court, Petitioner's counsel, Assistant Federal Public Defender Maggie Moy, Esq., objected to a two-level enhancement under § 3C1.2 for reckless endangerment.[1] (Tr. (Resp't Opp'n Ex. 1) at 3:13-8:25; Resp't Opp'n Ex. A (letter arguing that an enhancement under § 3C1.2 is improper).) The Court overruled the objection, noting that Petitioner had refused to pull over as directed by police and continued driving for three miles during rush hour, until stopped by a traffic jam, and police had to break the windows of his vehicle to apprehend him. (Tr. at 6:1-8:25.) Ms. Moy also objected to the calculation of criminal history points, and the Court eliminated three points from Paragraph 64 of the PSR and one point from Paragraph 83. (Tr. at 9:1-17, 10:3-14.) However, because the Court found that Petitioner qualified as a career offender, the recommended Guideline range was 151 months to 181 months. (Tr. at 11:6-9.)

Ms. Moy also argued on Petitioner's behalf that he was not a "typical" career offender, because "there were never any intervening arrests and there was one period of incarceration."

---

[1] The Guideline provides: "If the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer, increase by 2 levels." U.S.S.G. § 3C1.2 (2008).

(Tr. at 14:12-15:25.) Ms. Moy advocated for a shorter sentence because of Petitioner's "mental health issues." (Tr. at 16:3-13, 16:17-21, 22:4-25.) The Court considered these arguments and the factors enumerated in 18 U.S.C. § 3553(a), and arrived at the sentence of 151 months, at the bottom end of the recommended range. (Tr. at 39:15-46:13.)

Petitioner appealed his sentence to the Third Circuit. A three-judge panel affirmed the sentence, rejecting Petitioner's arguments that the Court (1) erred in applying a two-point enhancement under § 3C1.2, (2) erred in calculating his criminal history score, (3) should have used the 1997 sentencing Guidelines, and (4) erred in classifying him as a career offender. See United States v. Dawkins, 463 F. App'x 93, 99 (3d Cir. 2012). The Third Circuit also addressed Petitioner's ineffective assistance of counsel argument, observing that such claims generally are not considered on direct appeal. The court nevertheless stated that "Dawkins cannot show that his counsel's performance was in any way deficient, because we find no meritorious issues that counsel could have or should have raised through objections or otherwise." Id. at 96 n.2. The Third Circuit concluded that "the sentence was substantively reasonable." Id. at 99. Rehearing en banc was denied on April 23, 2012. Petitioner timely signed and mailed the present Petition on April 22, 2013.

## III. STANDARD OF REVIEW

Under 28 U.S.C. § 2255(a), a federal prisoner may move to vacate, set aside or correct a sentence on the ground that the sentence was imposed in violation of the Constitution or federal law, the sentencing court was without jurisdiction, or the sentence is in excess of the maximum authorized by law or is otherwise subject to collateral attack. The district court shall grant a hearing to determine the issues and make findings of fact and conclusions of law. 28 U.S.C. § 2255(b). However, if the motion, files and records of the case conclusively show that the prisoner is not entitled to relief, the petition will be denied. § 2255(b); see also United States v. McCoy, 410 F.3d 124, 131-32 (3d Cir. 2005) (holding a district court must grant an evidentiary hearing unless the record before it conclusively showed the petitioner was not entitled to relief). A hearing need not be held if the petition raises no legally cognizable claim, or if the factual matters raised by the petition may be resolved through the district court's review of the motions and the records in the case, or, in some circumstances, if the court, in its discretion, finds the movant's claims to be too vague, conclusory or palpably incredible. United States v. Costanzo, 625 F.2d 465, 470 (3d Cir. 1980) (quoting Machibroda v. United States, 368 U.S. 487, 495 (1962)).

6

## IV.   DISCUSSION

### A. Section 3C1.2 enhancement

Petitioner first argues that the Court erred in applying a two-level enhancement under U.S.S.G. § 3C1.2, because he did not recklessly endanger anyone when he did not comply with police directives to stop his car or to get out of the vehicle once stopped. (Pet. at 12.) Petitioner made the same argument on appeal, and the Third Circuit held that the Court's application of § 3C1.2 was appropriate, stating, "we find no meritorious basis for appealing the § 3C1.2 enhancement." Dawkins, 463 F. App'x at 97-98. This Court and the Third Circuit panel considered the arguments that Petitioner now makes -- namely, that he was driving the speed limit and, later, sitting in traffic, refusing to exit his car -- and rejected them because "[p]olice were forced to engage in a motor vehicle chase and to act with weapons drawn, both of which clearly created a substantial risk of harm." Id.; (Tr. at 7:17-8:25).

A petitioner may not use § 2255 to "relitigate questions which were raised and considered on direct appeal." United States v. DeRewal, 10 F.3d 100, 105 n.4 (3d Cir. 1993). See also Withrow v. Williams, 507 U.S. 680, 721 (1993) ("federal courts have uniformly held that, absent countervailing considerations, district courts may refuse to reach the merits of a constitutional claim previously raised and rejected on direct

7

appeal"). Even if Petitioner's claim may be construed as having

a constitutional dimension, there are no countervailing

considerations that require the Court to reconsider its factual

findings and legal conclusions, which have been affirmed. Having

already addressed this issue, the Court will not grant relief on

this ground.

**B.   Career offender status**

Under the Guidelines,

> A defendant is a career offender if (1) the defendant
> was at least eighteen years old at the time the
> defendant committed the instant offense of conviction;
> (2) the instant offense of conviction is a felony that
> is either a crime of violence or a controlled
> substance offense; and (3) the defendant has at least
> two prior felony convictions of either a crime of
> violence or a controlled substance offense.

U.S.S.G. § 4B1.1 (2008). A "crime of violence" means any offense

punishable by imprisonment for a term of at least one year that

"(1) has as an element the use, attempted use, or threatened use

of physical force against the person of another, or (2) is

burglary of a dwelling, arson, or extortion, involves use of

explosives, or otherwise involves conduct that presents a

serious potential risk of physical injury to another." U.S.S.G.

§ 4B1.2(a). The commentary clarifies that a "'[c]rime of

violence' includes . . . robbery . . . ." § 4B1.2 cmt. n.1.

The Guidelines also specify that the term "two prior felony

convictions" means that the defendant committed the instant

offense "subsequent to at least two felony convictions of either a crime of violence or a controlled substance offense" and "the sentences for at least two of the aforementioned felony convictions are counted separately under the provisions of § 4A1.1(a), (b), or (c)." § 4B1.2(c). Section 4A1.1 specifies criminal history points to be awarded to prior sentences of various lengths, and the Guidelines further explain that

> [p]rior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest . . . . If there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day.

§ 4A1.2(a)(2).

Petitioner presents several arguments that he should not have been classified as a career offender under the Guidelines, none of which are persuasive.

First, he argues that he did not use physical force, violence or threats to accomplish his robberies, and thus he contends that none of his convictions should be considered "crimes of violence." (Pet. at 18-25.) This argument lacks merit and is contradicted by the record of this case. Again assuming that this claim addresses a constitutional deficiency, the Guidelines themselves specify that robbery is a crime of violence. § 4B1.2 cmt. n.1. Furthermore, Petitioner in his plea agreement stipulated that he "used force and violence or

9

intimidation" during both June 2009 robberies. (PSR ¶ 5; Plea

Agreement with Jermaine Dawkins ("Plea Agreement"), <u>United

States v. Dawkins</u>, No. 09-cr-582-JBS-1 (D.N.J. July 13, 2010)

[Docket Item 16].) The PSR also describes how Petitioner

threatened tellers and displayed handguns or what appeared to be

handguns to accomplish prior robberies in 1996 and 1997, which

resulted in the state- and federal-court convictions at issue.

(PSR ¶¶ 62-63, 65, 70-72.) Petitioner is not entitled to relief

on the basis that his crimes were not crimes of violence.

    Petitioner argues that sentencing him as a career offender

violates the full faith and credit clause of the U.S.

Constitution, as well as 28 U.S.C. 1738[2] and contract law, in

light of his plea agreement. (Pet. Supplement [Docket Item 14]

at 8-9.) The main thrust of Petitioner's argument is that all of

his prior robbery convictions must be counted as a single

conviction -- in other words, they cannot be "counted

separately" for purposes of the career offender provisions of

the Guidelines -- because the sentencing judge in the Southern

District of New York "incorporated within its judgment the fact

that the Petitioner's Suffolk and Nassau County charges were

---

[2] Section 1738 provides: "Such Acts, records and judicial
proceedings or copies thereof, so authenticated, shall have the
same full faith and credit in every court within the United
States and its Territories and Possessions as they have by law
or usage in the courts of such State, Territory or Possession
from which they are taken."

10

consolidated with each other for sentencing purposes, along with the sentence imposed in case no. 99 CR 873-01." (Id.) (emphasis in original). He claims that promises to this effect induced him to plead guilty in 2001. (Id. at 11.) At bottom, Petitioner argues that he does not have enough separate, prior convictions to qualify as a career offender.

Petitioner advanced a related argument before the Third Circuit, which the panel rejected. Dawkins, 463 F. App'x at 98-99. He argued that he did not have the requisite number of convictions to qualify as a career offender. Id. at 99. The Third Circuit explained that "[a]lthough there were no intervening arrests between any of Dawkins's convictions, the District Court counted three sentences separately because the sentences resulted from offenses contained in different charging instruments, and were imposed on different days," in accordance with § 4A1.2(a)(2). Id. at 98. The Third Circuit continued:

> Because Dawkins was properly charged with three separate sentences for robbery under [§ 4A1.1(a)], he had not just two, but three prior robbery convictions, amply qualifying him as a career offender under U.S.S.G. § 4B1.2(c). Thus, the District Court did not err in finding that Dawkins was a career offender.

Id. at 99. Even accepting Petitioner's position that his state convictions count as a single sentence for career offender purposes, his conviction in federal court -- based on separate charges for separate robberies and for which he was sentenced on

11

a different day -- constitutes a second prior conviction for a crime of violence, and he properly qualifies as a career offender.

The present facts do not implicate the full faith and credit clause because Petitioner does not seek recognition of a state judgment in a sister state. See U.S. Const. art IV, § 1; Restatement (Second) of Conflict of Laws § 103. Nor is this Court bound by previous determinations of Petitioner's criminal history or career offender status in separate proceedings involving separate offenses in other federal district courts. The Court must apply the Guidelines on their own terms.

Petitioner is correct that the sentencing judge in the Southern District of New York considered Petitioner's state-court convictions as related for the purposes of calculating criminal history points under § 4A1.1 and § 4A1.2. (Presentence Investigation Report, United States v. Dawkins, No. 99 CR 873-01 (RMB), at 4 ¶ j (S.D.N.Y. Sept. 21, 2001).) But the sentencing judge did not conduct a career offender analysis under § 4B1.1, considering all of Petitioner's state-court and federal convictions together, as this Court did. Nothing in the record of Petitioner's case supports his contention that the sentencing judge "incorporated within its judgment the fact that petitioner's state robbery sentences were consolidated with each other, 'and' the sentence imposed in Case No. 99 CR 873-01" for

12

career offender purposes. (Reply [Docket Item 25] at 4.) Nor could the sentencing judge so rule. The Guidelines expressly direct the Court, in cases where there is no intervening arrest, to treat prior sentences separately unless the sentences resulted from offenses contained in the same charging instrument or the sentences were imposed the same day. § 4A1.2(a)(2). The Third Circuit affirmed this Court's finding that the federal charges were neither contained in the state charging instrument, nor were they imposed on the same day as the state-court judgments. Dawkins, 463 F. App'x at 99. As for Petitioner's contract argument, according to Petitioner's plea agreements in this District and the Southern District of New York, Petitioner was aware at the time of his plea that his sentence would be determined by the Court and the prosecutors could not and did not make any promise as to what sentence Petitioner would receive. Therefore, Petitioner's arguments lack merit, and he is properly considered a career offender.

Petitioner also argues that the Court should have applied the 1997 Guidelines, which he contends are more favorable to him, but the Third Circuit rejected a similar argument, finding "no basis for the District Court to apply the 1997 Guidelines." Id. at 98. Generally, the Court is to apply the Guidelines in effect at the time of sentencing, but the ex post facto clause of Article I of the U.S. Constitution prohibits such application

13

if amendments to the Guidelines, which take effect after the offending conduct but before sentencing, would increase the sentencing range. Peugh v. United States, 133 S. Ct. 2072, 2078 (2013); United States v. Menon, 24 F.3d 550 (3d Cir. 1994). As the Third Circuit stated on direct review "an ex post facto problem could only exist if the relevant Guideline had been materially changed between the time of the instant offense and the sentencing . . . and no changes were made to the relevant passages . . . between the enactment of the 2009 and 2010 Guidelines manual." Dawkins, 463 F. App'x at 98. Although the Third Circuit was referring only to §§ 4A1.1(a) and 4A1.2(a)(2), no material changes were made to any of the provisions relevant to Petitioner's career offender status between the robberies in June 2009 and his sentencing. Therefore, there is no ex post facto problem. Petitioner was properly considered a career offender, and he is not entitled to relief on this ground.[3]

### C.   Ineffective assistance of counsel

Finally, Petitioner argues that his received ineffective assistance of counsel in violation of the Sixth Amendment. (Pet. at 26-34.) "To establish ineffective assistance of counsel a defendant must show both deficient performance by counsel and

---

[3] Petitioner adds an ineffective assistance of counsel claim based on his attorney's failure to make these career offender arguments at sentencing or on appeal. (Pet. Supplement at 12-14.) Because the Court finds no error, Petitioner's counsel was not ineffective for failing to advance these arguments.

prejudice." <u>Premo v. Moore</u>, 131 S. Ct. 733, 739 (2011). A
petitioner must show (1) that "'counsel's representation fell
below an objective standard of reasonableness,'" and (2) "'a
reasonable probability that, but for counsel's unprofessional
errors, the result of the proceeding would have been
different.'" <u>Id.</u> (citing <u>Knowles v. Mirzayance</u>, 556 U.S. 111,
122 (2009)); <u>see also</u> <u>Strickland v. Washington</u>, 466 U.S. 668,
687-88 (1984).

Petitioner advances seven bases for his ineffective
assistance of counsel claim: (1) "[f]rom the very begining [sic]
counsel convinced this petitioner to accept a plea agreement
that was in violation of the law," (2) counsel conceded
Petitioner was a career offender, (3) counsel conceded a two-
level enhancement under § 3C1.2 applied, (4) counsel failed to
make downward departure motions at sentencing, (5) counsel did
not make mitigation arguments, (6) counsel did not make
mitigation arguments based on his "history of mental illness,"
and (7) counsel did not challenge the conviction on mental
illness grounds. (Pet. at 27-28.)

These arguments also lack merit. The Third Circuit already
opined in this case that "Dawkins cannot show that his counsel's
performance was in any way deficient, because we find no
meritorious issues that counsel could have or should have raised
through objections or otherwise." <u>Dawkins</u>, 463 F. App'x at 96

15

n.2. However, the Court will address Petitioner's arguments in turn.

First, Petitioner's counsel did not provide ineffective assistance in recommending that Petitioner plead guilty. The case against Petitioner was strong. The victims of the Skylands Community Bank robbery provided a description of Dawkins's vehicle, and Petitioner was apprehended with the stolen money that bore markings identified by the teller. (PSR ¶ 14.) Petitioner admits that he committed the robberies. (Tr. at 27:13-30:3.) By virtue of Petitioner's plea, the Government moved to dismiss the second count of the indictment based on the robbery of the Skylands Community Bank. (Plea Agreement at 1.) Both this Court and the Third Circuit found that Petitioner's plea was knowing and voluntary. Dawkins, 463 F. App'x at 94, 96. Under these circumstances, Petitioner's counsel prudently advised him to plead guilty and did not provide ineffective assistance.[4]

---

[4] Petitioner is incorrect that his plea agreement violates Lafler v. Cooper, 132 S. Ct. 1376, 1385 (2012), or Missouri v. Frye, 132 S. Ct. 1399 (2012). Lafler concerned situations in which a defendant is offered a plea agreement but rejects the offer on advice of counsel and, after a full trial, receives a harsher sentence than what had been offered. Lafler, 132 S. Ct. at 1383. Frye concerned situations in which counsel did not inform a defendant of a plea offer, and the defendant accepted a later, less favorable plea. Frye, 132 S. Ct. at 1404. Petitioner's case presents neither situation.

16

Petitioner's contentions that his counsel was ineffective
for failing for object to the Court's career offender analysis
or the § 3C1.2 enhancement are unpersuasive. As a factual
matter, Petitioner's counsel did object to the § 3C1.2
enhancement, in a letter and at sentencing (Tr. at 3:13-16), and
she advanced an argument that Petitioner was not a "typical"
career offender (Tr. at 14:12-16:2) in an effort to obtain a
lenient sentence. More importantly, the Court has found that
Petitioner qualified as a career offender and for a § 3C1.2
enhancement, and "counsel cannot be deemed ineffective for
failing to raise a meritless claim." Werts v. Vaughn, 228 F.3d
178, 203 (3d Cir. 2000). Petitioner is not entitled to relief on
this ground.

Petitioner argues that his counsel was ineffective for
failing to make downward departure motions or present mitigating
factors to the Court. (Pet. at 28, 30.) Petitioner does not
identify what motions should have been made at trial that would
have been granted and would have yielded a reduced sentence.
Based on Petitioner's lengthy criminal history, and the fact
that he robbed two banks within five days of his release from
federal custody, it is unlikely that any motions for a downward
departure would have been granted. Even if Petitioner could
somehow show that his counsel should have filed additional
motions, he cannot demonstrate "a reasonable probability that,

17

but for counsel's unprofessional errors, the result of the proceeding would have been different." Premo, 131 S. Ct. at 739.

The only mitigating factor Petitioner identifies is his "mental competence." (Pet. at 30.) He argues that his counsel "did not investigate the petitioners [sic] mental issues so that his mental competence could be a mitigating factor." (Id.) In fact, counsel raised mental health issues with the Court at sentencing, to lobby for a more favorable sentence:

> it's clear Mr. Dawkins has mental health issues. . . .
> [I]t's clear that he has personality disorders that
> have contributed to this. Unfortunately, the orders of
> the district court in New York had not been followed
> in terms of him . . . receiving mental health
> treatment as part of his supervised release. . . .
> It's clear that Mr. Dawkins lacks significant coping
> skills. . . . None of this excuses Mr. Dawkins'
> behavior. But, on the other hand, it's . . . a concern
> for drafting an appropriate sentence and considering
> what is a just punishment in this.

(Tr. at 16:17-18:6.) The Court, after inquiring about Petitioner's mental health treatment and counseling sessions, observed that

> it's hard to express much leniency for an individual
> who just two days after he had his first meeting with
> his federal probation officer and formally begins his
> supervised release, robs a bank and three days later
> robs another one. If his prison terms didn't cause him
> to think twice about doing that and he had been in
> prison for really a good portion of his adult life now
> because of robberies, then why would a lighter
> sentence suffice?

(Tr. at 21:13-20.) Petitioner's counsel persisted by arguing that "mental health treatment, coupled with his older age, I

18

think reduces his risk of recidivism." (Tr. at 22:23-25.)
Counsel also described how Petitioner's condition improved
"tremendously" with medication. (Tr. at 23:20-24.) Petitioner's
counsel suggested a sentence of 108 to 120 months, rather than
151 to 181 months. (Tr. at 23:16-19.)

While additional investigation about Petitioner's mental
condition may have uncovered additional facts, this Court "must
apply a 'strong presumption' that counsel's representation was
within the 'wide range' of reasonable professional assistance,"
Premo, 131 S. Ct. at 739 (quoting Strickland, 466 U.S. at 689).
Petitioner's counsel presented mental health as a reason for a
reduced sentence, and her performance did not fall below the
objective standard of reasonableness. Counsel presented the best
arguments she could, given her client's situation and history.

Petitioner also argues that his counsel "had various
opportunities to challenge the conviction on mental illness
grounds but counsel . . . gave and presented no mitigation to
assist the petitioner Dawkins . . . ." (Pet. at 28.) The PSR
contains a statement from Petitioner that "right before I
committed these robberies, I was seeing a therapist and trying
to get treatment for my anxiety, depression and ADHD." (PSR ¶
20.) He adds: "I am not trying to blame the BOP, I was wrong and
I know that. The only thing I hope for is that this time, the
treatment I receive in prison will be followed by medication and

19

therapy upon my release so that I can successfully transition back to society . . . ." (Id.) At sentencing, Petitioner again stated that he knew his actions were wrongful. (Tr. at 29:15-20.)

Nothing in the record of this case, or the Petition itself, suggests that Petitioner suffered from a mental disorder that would negate his culpability for the crimes committed. Rather, the record is conclusive that Petitioner enjoyed sufficient mental capacity to appreciate and be responsible for his actions. This Court cannot identify any manner in which Petitioner's counsel could have "challenge[d] the conviction on mental illness grounds." (Pet. at 28.) Petitioner's counsel was not constitutionally deficient.

Having failed to identify any manner in which Petitioner's counsel's assistance was constitutionally ineffective, Petitioner is not entitled to relief under § 2255.

**V.  CONCLUSION**

For the reasons explained above, the Court will deny the Petition to vacate and correct Petitioner's sentence. An accompanying Order will be entered.

**VI. CERTIFICATE OF APPEALABILITY**

Pursuant to 28 U.S.C. § 2253(c)(1)(B), "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from the final

order in a proceeding under section 2255." A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." § 2253(c)(2). To satisfy that standard, a petitioner must demonstrate that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).

Here, jurists of reason could not disagree with the Court's resolution of Petitioner's constitutional claims. Under the standard recited above, the Court will deny a certificate of appealability.


**April 28, 2014**                          **s/ Jerome B. Simandle**
Date                                        JEROME B. SIMANDLE
                                            Chief U.S. District Judge